# CIRCUIT COURT OF HENRICO COUNTY

American National
Lawyers Insurance
Reciprocal

    v.

Dingman

February 15, 2000

Case No. CH98-382

BY JUDGE CATHERINE C. HAMMOND

This matter is before the court on petitioner's action to rescind a professional liability policy issued to respondent, Mr. Dingman. The court heard the evidence without a jury on February 11, 2000. There follow the court's findings of fact and conclusions of law.

In 1993 Mr. Dingman was practicing law in Staunton. He began representation of a new client, Centerpoint Capital Corporation. In the course of this representation, Mr. Dingman received funds from Centerpoint's investors in France and deposited those funds to his attorney trust account in Staunton. Mr. Dingman confirmed receipt of $541,412.00, naming the individual investors who sent these funds, by letter dated June 13, 1993. (PX4.) Soon thereafter, the French investors began asking for their money back.

Mr. Dingman testified that the investors made demands for their funds beginning in August 1993 and continuing for months. However, in September 1993, Mr. Dingman ceased representing Centerpoint because he was suspicious of its principals. Mr. Dingman explained that because his client was Centerpoint, he could not respond fully to the French investors. Instead, he redirected most inquiries to the principals of Centerpoint, who had responsibility for the investments.

In October 1993, Mr. Dingman received threatening letters from the French investors. (PX8, 10.) In January 1994, Mr. Dingman received a demand letter from Lawrence Goldberg, a member of the New York bar hired by the French investors to recover "the entire loan amount of $1,000,000.00." (PX12.) In March 1994, Mr. Dingman received service of process of a pleading filed in the Circuit Court of Augusta County by Mr. Goldberg. (PX17.) In this pleading, Mr. Goldberg asserted "a just claim" by his clients against Mr. Dingman individually.

On July 10, 1994, Mr. Dingman signed an application for insurance coverage with The Virginia Insurance Reciprocal. (PX3.) It is clear from the application that this was for renewal of previously issued coverage because many of the questions are answered "no change." In response to question 18 on the application, Mr. Dingman responded that he was not "aware of any circumstances which may result in a claim being made against" him as an attorney.

In August 1994, the same investors who were identified in Mr. Dingman's accounting for his trust account (PX4) sued Mr. Dingman in federal court in New York. In January 1995, Mr. Dingman notified his insurer of the claim and was provided a defense under a reservation of rights respecting the scope of coverage.

In the fall of 1997, petitioner began an investigation into whether Mr. Dingman had misrepresented any facts on his 1994 application. This investigation would not have occurred had not Mr. Goldberg made unusual inquiries about Mr. Dingman's insurance. After this investigation, in March 1998, petitioner advised Mr. Dingman that it would seek to rescind the policy (PX18) and immediately filed its Bill of Complaint in the instant action.

Petitioner carried its burden of proof at trial when it introduced correspondence received by Mr. Dingman before July of 1994. In January, Mr. Dingman learned that the French investors had hired Mr. Goldberg to recover their money. Mr. Goldberg threatened a lawsuit, and Mr. Goldberg asserted a claim against Mr. Dingman in a Circuit Court. (PX17.) By July 1994, Mr. Dingman clearly had sufficient information to recognize "circumstances which [could] result in a claim" against him. Thus his response to question 18 on the application was untrue.

Petitioner further proved that the misrepresentation on the application was material. The credible testimony of petitioner's employees established that the company would have underwritten the application differently had this potential claim been disclosed. Under the express terms of the insurance contract, the parties intended that the applicant's misrepresentation or omission could void the policy.

Respondent did not carry his burden of proving any affirmative defense. On the defenses of estoppel and laches, there was no evidence to support the theory that the insurance company was on any kind of notice about a misrepresentation until 1998 when it filed its Bill of Complaint. As soon as petitioner investigated the application, it acted. If any delay occurred, it was reasonably undertaken to analyze the facts, as the court accepts the testimony that the company considers rescission to be a "drastic" remedy. Mr. Dingman argues that he relied to his detriment on the promise to defend him, but this was not supported by the evidence. He testified that he has been well represented by counsel appointed by the insurer; there is no impediment to Mr. Dingman's hiring the same counsel to continue the representation.

It would be appreciated if Ms. Henry would prepare the judgment order rescinding the contract and allowing for respondent to recover the premium payments that are in the custody of the Clerk.